BATS, INC., dba HARPER TRUCK & CAR RENTALS OF HAWAII, Plaintiff, *v.* GENE SHIKUMA, Defendant and Third-Party Plaintiff, *v.* HAWAII INSURANCE AND GUARANTY COMPANY, LTD., Third-Party Defendant, *v.* KENNETH NAKAMOTO, Defendant and Third-Party Plaintiff-Appellee, *v.* UNITED NATIONAL INSURANCE COMPANY, LTD., etc., Third-Party Defendant-Appellant

NO. 6573

SEPTEMBER 30, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* In this appeal from the lower court's entry of summary judgment in an automobile accident case for the defendant and third-party plaintiff-appellee, only one issue is before us: Whether at the time of the accident the appellee was "using" the vehicle so as to qualify for insurance coverage under the collision clause of his automobile insurance policy.

On August 2, 1974, the holder of the insurance policy in question, Defendant and Third-Party Plaintiff-Appellee Kenneth Nakamoto (hereinafter "Insured") rented a van in Hilo, Hawaii from Plaintiff BATS, Inc. (hereinafter "plaintiff") to help his friend Gene Shikuma (hereinafter "Shikuma") move Shikuma's belongings from Hilo to Shikuma's new residence in Kona, Hawaii. Plaintiff would not rent the van to Shikuma because he had a restricted driver's license that only permitted him to drive to and from his place of employment.

Insured drove the van with Shikuma as a passenger to the new residence in Kona and unloaded Shikuma's belongings. Thereafter, Insured drove Shikuma in the van back to Insured's home in Honokaa. Once the trip to Honokaa was

completed, Shikuma and Insured agreed that Shikuma would take the van back to Hilo for Insured, who was bound to return the van to Hilo under the terms of the rental contract. Shikuma also intended to recover the car he had left in Hilo. According to their plan, Shikuma was to drive the van to his new home in Kona and return the van the next day to Plaintiff's office in Hilo.

On the way to Kona, Shikuma was involved in the accident that is the genesis of this case. At the time of the accident, Shikuma had no automobile liability insurance coverage; Insured, however, had a personal automobile liability insurance contract with Third-Party Defendant-Appellant United National Insurance Company, Ltd. (hereinafter "Insurer"). Plaintiff was granted summary judgment against Insured for costs, attorney's fees and the damage to the van. This appeal arises out of Insured's third-party claim against Insurer for his costs and attorney's fees and the amount of plaintiff's summary judgment. Insured alleges coverage under the following pertinent provisions of the insurance contract:

> *Coverage E – Collision or Upset:* To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto.
>
> . . . .
>
> (c) Under coverage E, this insurance applies only with respect to a private passenger automobile while being *operated or used* by such named insured or spouse. Exclusion (k) does not apply to this insuring agreement. (Emphasis supplied)

Specifically, Insured contends that though Shikuma was actually driving the van at the time of the accident, he (Insured) was "using" it within the meaning of provision (c).

The court below found the meaning of the word "use" to be ambiguous and granted summary judgment consistent with Insured's contentions. We find the meaning of the word "use" to be clear and we affirm. As the Supreme Court of

Hawaii said in *Waianae Model Neighborhood Area Ass'n v. City & County*, 55 Haw. 40, 514 P.2d 861 (1973):

> An appellate court may affirm summary judgment on any ground which appears in the record, regardless of whether the circuit court relied on it.

55 Haw. at 43.

The provision of the insurance policy here in question covers the named insured where he *operates or uses* a private passenger automobile. The inclusion of both terms in provision (c) demonstrates that Insurer intended the words to have different meanings — a contrary construction would have the absurd result of making one of the terms mere surplusage. Indeed, courts that have considered the meanings of "use" and "operate" in insurance policies have found their meanings to be significantly different. *See, e.g., Indemnity Insurance Co. v. Metropolitan Casualty Ins. Co.*, 33 N.J. 507, 166 A.2d 355 (1960); *Allstate Ins. Co. v. Hartford Accident and Indemnity Co.*, 486 S.W.2d 38 (Mo. Ct. App. 1972); *American Automobile Ins. Co. v. Taylor*, 52 F.Supp. 601 (N.D. Ill. 1943). "Operate" generally means to regulate and control the actual operation of the car, *see, e.g., Schaffer v. Mill Owners Mut. Ins. Co.*, 242 Ore. 150, 407 P.2d 614 (1965); *Orth v. Universal Underwriters Ins. Co.*, 284 F.2d 857 (9th Cir. 1960); 51 A.L.R.2d 928, 932, §§ 4, 5[b], though it has been held to cover a person who is not the occupant of a vehicle. *Neel v. Indemnity Ins. Co.*, 122 N.J.L. 560, 6 A.2d 722, *aff'd* 124 N.J.L. 130, 11 A.2d 106 (1939). "Use", on the other hand, has been given a broader interpretation than the term "operate".

To determine whether a vehicle was "used" by an insured where a third-party was actually operating the insured's vehicle, courts have analyzed two factors: (1) whether the vehicle was under the supervision and control of the insured, and (2) whether the vehicle was being operated to serve a purpose of the insured.[1] *See, e.g., Hake v. Eagle Picher Co.*, 406 F.2d 893 (7th Cir. 1969); *County of Wyoming, N.Y. v. Erie Lackawanna Ry. Co.*, 360 F.Supp. 1212 (W.D. N.Y. 1973); *Liberty Mut.*

---

[1] Whether both factors must be present is an issue not addressed by this opinion.

*Ins. Co. v. Steenberg Constr. Co.,* 225 F.2d 294 (8th Cir. 1955); *American Automobile Ins. Co. v. Taylor, supra,* 52 F.Supp. 601.

In the present case, Insurer does not dispute that Shikuma was acting on behalf of Insured when he sought to complete Insured's obligations under the rental contract by returning the van to Hilo. Insurer contends, however, that Insured did not exercise sufficient supervision and control to have been "using" the van at the time of the accident. We do not agree.

Contrary to Insurer's assertions, it was not necessary for Insured to continually direct the operation of the van before he could be found to have been "using" it at the time of the accident. A case in point is *American Automobile Ins. Co. v. Taylor, supra,* 52 F.Supp. 601. In *Taylor,* a father was found to have "used" his car where, after his wife had taken his car to a gas station at his direction to have the battery changed, his son started the car thereby causing injury to a service station attendant. The court there noted:

> It is, therefore, my opinion that Elsworth Wayne Taylor [the son] in starting the motor at the general request of Mr. Nash [a service station attendant] . . . was the implied agent of his father, and that the car at that time and place, was being used by the "named insured" [the father] in and about his duty and business of providing the same with a workable battery. The situation is analogous in my opinion to the implied agency that would exist if the boy were washing the car or changing a tire thereon in the necessary task of maintaining the car in a presentable and usable condition and without specific direction from the father so to do. In none of these instances is the son operating the car or himself using it. The use is that of the father who is the named insured.

52 F. Supp. at 603. *See also, Liberty Mutural Ins. Co. v. Steenberg Const. Co., supra,* 225 F.2d 294; *Christian v. Royal Ins. Co.,* 185 Minn. 180, 240 N.W. 365 (1932).

In the present case, the conditions placed upon the use of the van vis-a-vis the agreement between Insured and Shikuma constitute supervision and control over its use much

like that exercised by the father over his car in *American*. As the renter/operator of the van, Insured had the right to its supervision and control. *Cf. J. Scheer and Sons Co. v. Travelers Indemnity Co.*, 35 Misc.2d 262, 229 N.Y.S.2d 248 (1962). Moreover, the agreement included the purpose of the van's use and empowered Shikuma to carry out that purpose. Indeed, in view of the designation of a specific individual to carry out the purpose of the agreement, and the specific conditions placed upon the accomplishment of that purpose, i.e., the designation of a certain route to Hilo, it appears that the supervision and control exercised by Insured was greater than that exercised by the father in *American*.

In conclusion, we find the meaning of the word "used" as it appears in the phrase "operated or used by such named insured" in the instant automobile policy to clearly include the circumstances at bar where the van was under the supervision and control of Insured and Shikuma operated the van to serve a purpose of Insured's.

Affirmed.

*Walter Davis (George W. Playdon, Jr.* on the briefs, *Davis, Witherwax, Playdon & Gerson* of counsel), for third-party defendant-appellant.

*Tom C. Leuteneker (Carlsmith, Carlsmith, Wichman and Case* of counsel), for defendant and third-party plaintiff-appellee.