DONALD S.K. CHING, Plaintiff-Appellant/Cross-Appellee,
v.
MARK G. VALENCIA, JAMES C. McWHINNIE, DAMON KEY LEONG KUPCHAK HASTERT, a Law Corporation, Defendants-Appellees/Cross-Appellants, and
JOHN DOES 1-50, et al., Defendants.
No. 27331
Supreme Court of Hawaii.
August 26, 2008.
On the briefs:
Peter Van Name Esser and Stephen T. Hioki, for Plaintiff-Appellant/ Cross-Appellee, Donald S.K. Ching
Sidney K. Ayabe and Steven L. Goto of Ayabe, Chong, Nishimoto, Sia & Nakamura, for Defendants-Appellees/Cross-Appellants, Mark G. Valencia, James C. McWhinnie, and Damon Key Leong Kupchack Hastert, a Law Corporation

SUMMARY DISPOSITION ORDER
By: MOON, C.J., and NAKAYAMA, JJ., Circuit Judge SAKAMOTO, in place of LEVINSON, J., recused, Circuit Judge WILSON, in place of ACOBA, J., recused and Circuit Judge AHN, in place of DUFFY, J., recused
Plaintiff-Appellant/Cross-Appellee Donald S.K. Ching ("Plaintiff") appeals and Defendants-Appellees/Cross-Appellants Mark G. Valencia, James C. McWhinnie, and Damon Key Leong Kupchack Hastert, a Law Corporation (collectively referred to as "Defendants") cross-appeal from the first circuit court's[1] May 3, 2005 order granting in part and denying in part Defendants' motion for summary judgment and June 3, 2005 judgment in favor of Defendants.,
On appeal, Plaintiff argues that the circuit court erred in granting summary judgment on his malicious prosecution claim inasmuch as (1) judicially enforceable arbitration proceedings satisfy the "prior proceeding" element required of malicious prosecution and (2) he lacked a reasonable opportunity for discovery prior to the court's finding that "there is no way [he] can prove lack of probable cause." Plaintiff also contends that the circuit court erred in granting summary judgment on his defamation claim because the litigation privilege does not apply to lawyers' statements made in arbitration proceedings.
On cross-appeal, Defendants argue that the circuit court abused its discretion (1) by failing to award them attorneys' fees and costs under Hawai`i Revised States ("HRS") § 607-14.5 (1993)[2] because Plaintiff brought frivolous claims and (2) by declining to consider the exhibits submitted in support of Defendants' motion for summary judgment.
Upon carefully reviewing the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we hold that:
(1) In light of this court's policies (1) to avoid the chilling effect of possible subsequent litigation[3] and (2) in favor of arbitration as a means of dispute resolution,[4] a private contractual arbitration will not support a subsequent claim for malicious prosecution.[5] Accordingly, the circuit court did not err in granting summary judgment for Plaintiff's malicious prosecution claim;
(2) Because the absolute litigation privilege[6] includes attorneys' statements made during arbitration,[7] the circuit court did not err by granting summary judgment for Plaintiff's defamation claim;
(3) The circuit court did not err by failing to find that Plaintiff's claims were frivolous[8] and denying Defendants attorneys' fees and costs. At the time Plaintiff filed the complaint, the lawsuit involved novel malicious prosecution and defamation legal concepts.[9] Although the circuit court properly granted summary judgment, Defendants did not establish that Plaintiff's claims were made in bad faith;[10]
(4) Inasmuch as Plaintiff's claims were not frivolous[11] even when taking into account Defendants' exhibits, the circuit court's failure to consider Defendants' exhibits is deemed harmless.[12] Therefore,
IT IS HEREBY ORDERED that the first circuit court's May 3, 2005 order granting in part and denying in part Defendants' motion for summary judgment and June 3, 2005 judgment in favor of Defendants are affirmed in all respects.
NOTES
[1] The Honorable Sabrina S. McKenna presided.
[2] HRS § 607-14.5, entitled, "Attorneys' fees and costs in civil actions," provides as follows:

(a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems lust, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).
(b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.
(c) A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.
HRS § 607-14.5 (emphases added).
[3] We have declared that courts "serve an important role in resolving conflicts and defining rights" thus and emphasized "the importance of meaningful access to [courts]." Matsuura v. E.I. du Pont de Nemours and Co., 102 Hawai`i 149, 156, 73 P.3d 687, 694 (2003). In the context of protecting communications during judicial proceedings, we quoted an ICA opinion that cautioned that the threat of subsequent.litigation affects access to the courts:

We do not wish to open the door to a second lawsuit being filed by the defendant every time the plaintiff loses a previous lawsuit, followed, we suppose, by a third lawsuit if the plaintiff in the second lawsuit loses that one and so on ad infinitium. We think that one of the things that distinguishes our society is the citizen's relative freedom of access to the courts.
Id. at 157, 73 P.3d at 695 (quoting Brodie v. Hawai`i Auto. Retail Gasoline Dealers Ass'n., Inc., 2 Haw. App. 316, 321, 631 P.2d 600, 604 (1981), rev'd on other grounds, 65 Haw. 598, 655 P.2d 863 (1982)). Permitting parties of contractual arbitration to bring a malicious prosecution claim in court based on the arbitration proceeding may prevent honest plaintiffs from raising their claims in arbitration. See Laing v. Shanberg, 13 F.Supp. 2d 1186, 1189 (D. Kan. 1998); Dickinson v. Echols, 578 So. 2d 1257, 1258 (Ala. 1991) (explaining that "'[p]ublic policy requires that all persons shall [be able to] resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge'"); Wong v. Tabor, 422 N.E.2d 1279, 1283 (Ind. Ct. App. 1981) ("The tort of malicious prosecution is not generally favored in our legal system, and thus its requirements are construed strictly against the party bringing the action."); Paul v. Nat'l Educ. Ass'n, 459 A.2d 1213, 1214 (N.J. Super. 1983) (noting that malicious prosecution suits tend to chill free access to the courts); W. Page Keeton, Prosser & Keeton on the Law of Torts 120, at 889-90 (5th ed. 1984) (observing that malicious prosecution claims have a chilling effect on honest litigants).
[4] See Tatibouet v. Ellsworth, 99 Hawaii 226, 234, 54 P.3d 397, 405 (2002)("The legislature overwhelmingly favors arbitration as a means of dispute resolution." (citation omitted)); Leeward Bus Co. v. Honolulu, 58 Haw. 64, 71 564 P.2d 445, 449 (1977) ("[T]he proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation.") (quoting Gregg Kendall & Assocs. v. Kauhi, 53 Haw. 88, 93, 488 P.2d 136, 140 (1971)); Schmidt v. Pac. Benefit Servs., Inc., 113 Hawai`i 161, 168, 150 P.3d 810, 817 ("[P]arties resort to arbitration to settle disputes more expeditiously and inexpensively than by a court action. It must be deemed that the primary purpose of arbitration is to avoid litigation." (quoting Excelsior Lodge No. One, Indep. Order of Odd Fellows v. Eyecor, Ltd., 74 Haw. 210, 225-26, 847 P.2d 652, 659-69 (1992)(block quote formatting omitted)) (emphasis added).

Permitting parties who arbitrated their dispute to subsequently litigate whether the arbitration was brought without probable cause and maliciously, would subvert the parties' intention to avoid litigation. See Sagonowsky v. More, 64 Cal. App. 4th 122, 132, 75 Cal. Rptr. 2d 118, 123 (1998)(observing that permitting malicious prosecution claims based on private contractual arbitration would "increase litigation and undermine the finality of dispute resolution to which the parties agreed"); Brennan v. Tremco, Inc., 25 Cal. 4th 310, 314, 20 P.3d 1086, 1088, 105 Cal. Rptr. 2d 790, 792-93 (2001) (holding that a person may not sue for the malicious prosecution of an action that the parties resolved through contractual arbitration even where the underlying action began in court in light of "1) the trend against creating or expanding derivative tort remedies, including malicious prosecution; and (2) the trend in favor of allowing the parties voluntarily to choose binding, private arbitration to end the entire dispute"); cf. Tatibouet, 99 Hawaii'i at 234, 54 P.3d at 405 (citations omitted) (declaring that the legislature strictly limits judicial review in arbitration awards because of the policy favoring arbitration and the parties' intent to avoid litigation).
[5] A malicious prosecution claim involves three elements: "(1) the prior proceedings must have been terminated in the plaintiff's favor; (2) the prior proceedings must have been initiated without probable cause; and (3) the prior proceedings must have been initiated with malice." Wong v. Cayetano, 111 Hawai`i 462, 478, 143 P.3d 1, 17 (2006) (citing Reed v. City & County of Honolulu, 76 Hawai`i 219, 230, 873 P.2d 98, 109 (1994)). This claim is designed to "maintain[] the integrity of the judicial system, provid[e] injured persons with some form of redress, and preserv[e] an individual's right to petition the court and to a jury trial." Chung v. McCabe Hamilton & Renny Co., Ltd., 109 Hawai`i 520, 532, 128 P.3d 833, 845 (2006).
[6] The litigation privilege states, "an attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." McCarthy v. Yempuku, 5 Haw. App. 45, 48-49, 678 P.2d 11, 14 (1984) (quoting Restatement (Second) of Torts § ("Restatement §") 586 (1977)). The absolute privilege applies where the statements (1) "were made in the course of a judicial proceeding" and (2) "were related, material, and pertinent to that proceeding." Id. at 48-49, 678 P.2d at 14. See McCarthy, 5 Haw. App. at 48-49, 678 P.2d at 14 (ruling that the "course of a judicial proceeding" includes "the institution of the proceedings or in the conduct of litigation before a judicial tribunal," in conferences, and "other communications preliminary to the proceeding" (quoting Restatement § 586 comment a)).

"Hawai`i courts have applied an absolute litigation privilege in defamation actions." Matsuura, 102 Hawaii at 154, 73 P.3d at 692 (citations omitted) (emphasis added); see Ferry v. Carlsmith, 23 Haw. 589, 591 (1917) ("[T]he protection is complete irrespective of the motive prompting the use of the words or writings, but the privilege does not extend to matters having no materiality or pertinency to the question involved in the suit."). The absolute privilege "protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." Restatement § 586 comment a.
[7] See Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai`i 251, 272-73, 151 P.3d 732, 752-53 (2007) (holding that, in the context of intentional interference with contractual relations and intentional interference with prospective economic advantage, the litigation privilege applies to an attorney's representation of a client in arbitration) (citing W. Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins. Co., 783 A.2d 398, 403 (R.I. 2001) (stating that quasi-judicial proceedings such as arbitration proceedings are "judicial proceedings," and, thus, statements in arbitration proceedings are privileged against suits for defamation)); see also Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai`i 92, 106 n. 16, 176 P.3d 91, 105 n. 16 (2008); Restatement § 586 comment d ("Judicial proceedings include all proceedings before an officer or other tribunal exercising a judicial function, on which see § 585, Comments c and f. As indicated there, an arbitration proceeding may be included.").

In Kahala Royal Corp., this court observed that "the scope of any privilege is based upon policy considerations, and listed the "interrelated policies associated with the litigation privilege" as follows:
(1) promoting the candid, objective, and undistorted disclosure of. evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement. Id. at 268, 151 P.3d at 749 (quoting Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawai`i 149, 155, 73 P.3d 687, 693 (2003)) (some citations, brackets, and internal quotation marks omitted).
[8] "In determining the award of attorneys' fees and costs and the amounts to be awarded [under HRS § 607-14.5], the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action." HRS § 607-14.5(b) (emphasis added). "A frivolous claim has been defined as `a claim so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required.'" Coll v. McCarthy, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991) (internal quotation marks omitted); see Canalez v. Bob's Appliance Serv. Ctr., 89 Hawai`i 292, 300, 972 P.2d 295, 303 (1999). The court may consider whether the "party alleging that the claims or defenses are frivolous had submitted to the offending party a request for their withdrawal." HRS § 607-14.5 (b) and (c).
[9] See Taomae v. Lingle, 110 Hawai`i 327, 332, 132 P.3d 1238, 1243 (concluding that Defendants did not act frivolously and that Plaintiff was not entitled to HRS § 607-14.5 attorneys' fees and costs because "the legal principles addressed in this case were not firmly established").
[10] See Willis v. Swain, 112 Hawai`i 184, 188, 145 P.3d 727, 731 (2006) ("[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
[11] The circuit court's failure to consider Defendants' exhibits with regards to the issue of granting summary judgment is harmless because it ruled in favor of Defendants.
[12] See HRS § 641-16 (1993) ("No order, judgment, or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant."); State v. Rivera, 106 Hawaii 146, 165-66, 102 P.3d 1044, 1063-64 (2004) ("[E]rror is not to be viewed in isolation [or] considered purely in the abstract. Consistent with the harmless error doctrine, we have frequently stated that error must be examined in light of the entire proceedings and given effect to which the whole record shows it is entitled." (citations and quotation marks omitted)); Wakabayashi v. Hertz Corp., 66 Haw. 265, 272, 660 P.2d 1309, 1314 ("Even an erroneous exclusion of relevant evidence does not necessarily call for reversal of the trial court, if no prejudice results.").